ILLINOIS CENTRAL RAILROAD COMPANY *v.* FUENTES ET AL., CONSTITUTING THE RAILROAD COMMISSION OF LOUISIANA.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 423.   Argued January 8, 1915.—Decided February 1, 1915.

The switching of empty cars to and from a connection with an interstate railroad to a side track within the terminal of another railroad, for the purpose of being there loaded with goods intended for interstate commerce, constitutes a part of interstate commerce, the regulation of which Congress has undertaken, and any order of a state commission regulating such switching transcends the limits of its power.

When freight actually starts in the course of transportation from one State to another it becomes a part of interstate commerce; and it is the essential nature of the movement and not the form of the bill of lading that determines the character of the commerce involved.

Order 295 of the Louisiana Railroad Commission, relative to switching of cars between connecting carriers and requiring carriers to conform to rates established by the Commission as to cars shipped in or out of the State, *held* unconstitutional as a burden upon, and an attempt to regulate, interstate commerce.

THE facts, which involve the constitutionality under the Commerce Clause of the Federal Constitution of orders made by the State Railroad Commission of Louisiana relative to switching of cars as applied to cars used in interstate commerce, are stated in the opinion.

*Mr. Blewett Lee,* with whom *Mr. Robert V. Fletcher, Mr. Hunter C. Leake* and *Mr. Gustave Lemle* were on the brief, for appellant:

The District Court had jurisdiction.

A switching movement, whereby interstate freight is delivered or an interstate movement is originated, is itself a movement in interstate commerce.

The order, since it deals with interstate commerce, is invalid as encroaching upon the exclusive authority of Congress.

This order cannot be construed as applying only to intrastate commerce, and thereby saved from invalidity.

The order if affecting interstate commerce is invalid not only on Federal grounds but because it violates the Constitution of Louisiana.

The decision of the court below was based on *Grand Trunk Ry.* v. *Michigan R. R. Commission*, 231 U. S. 457.

The effect of the order of the Commission is to deprive the appellant of its property without due process of law.

In support of these contentions, see *Tex. & Pac. Ry.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426; *Adams* v. *Vicksburg Ry.*; 29 I. C. C. 52; *Allen* v. *Pullman Co.*, 191 U. S. 171; *Chicago, R. I. & P. Ry.* v. *Hardwick Elevator Co.*, 226 U. S. 426; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Employers' Liability Cases*, 207 U. S. 463; *Goodman* v. *Heilig*, 157 N. Car. 6; *Gulf, C. & S. F. R. R.* v. *Texas*, 204 U. S. 403; *Gulf, C. & S. F. R. R.* v. *Texas*, 72 Texas, 404; *Hampton* v. *St. L., I. M. & S. R.*, 227 U. S. 456; *Ill. Cent. R. R.* v. *McKendree*, 203 U. S. 514; *Leloup* v. *Mobile*, 127 U. S. 640; *Louis. & Nash. R. R.* v. *Central Stock Yards*, 212 U. S. 132; *McNeill* v. *Southern Ry.*, 202 U. S. 545; *Mich. Cent. R. R.* v. *Powers*, 201 U. S. 245; *Minnesota Rate Cases*, 230 U. S. 352; *Ohio R. R. Comm.* v. *Worthington*, 225 U. S. 101; *Oliver* v. *Chi., R..I. & P. R. R.*, 89 Arkansas, 466; *Peoples &c. Co.* v. *Grand Trunk R. R.*, 27 I. C. C. 24; *R. R. Comm.* v. *Tex. & Pac. R. R.*, 229 U. S. 336; *Reagan* v. *Farmers' L. & T. Co.*, 154 U. S. 362; *Rhodes* v. *Iowa*, 170 U. S. 412; *Smyth* v. *Ames*, 169 U. S. 466; *Southern Pacific T. Co.* v. *Int. Com. Comm.*,

219 U. S. 498; *State* v. *Mo. Pac. Ry.*, 212 Missouri,. 658; *In re Detroit Switching Charges*, 28 I. C. C. 494; *Texas & N. O. R. R.* v. *Sabine Tram Co.*, 227 U. S. 111; *Trade Mark Cases*, 100 U. S. 82; *United States* v. *Ju Toy*, 198 U. S. 253; *United States* v. *Reese*, 92 U. S. 214; *United States* v. *Union Stock Yards*, 226 U. S. 286; *Waverly Oil Works* v. *Penna. R. R.*, 28 I. C. C. 621; *Worden* v. *Cole*, 74 Kansas, 226; *Ex parte Young*, 209 U. S. 123.

*Mr. Wylie M. Barrow*, with whom *Mr. Ruffin G. Pleasant*, Attorney General of the State of Louisiana, was on the brief, for appellees:

The Railroad Commission of Louisiana has power and authority to adopt Order No. 295. The laws of the State require railroads operating in Louisiana to perform the service.

The order was directed against all railroads operating in the State.

The order does not deprive appellant of its liberty to contract, nor of its property without due process of law, nor does it deny it the equal protection of the laws, in violation of the Fourteenth Amendment.

There is no encroachment upon the Federal exercise of power by the order of the Commission, which prescribes a reasonable regulation in aid of commerce and which prevents unjust discrimination in intracity switching.

The order of the Commission does not require the railroad company to give the use of its terminals to its connections.

The regulating power of the Commission extends over the carrier and all of its appurtenances.

When a railroad company declines a switch for its connections, or for shippers, between points on its terminals, on equal terms, at reasonable rates, it unjustly discriminates.

The order of the Commission, being in aid of com-

merce, does not conflict with the Act to Regulate Commerce.

The Commission's order prevents unjust discrimination in the switching of cars.

Appellant has opened its terminals and switches cars between points in the city of New Orleans for some; it should not be allowed to deny similar service to all who apply.

In support of these contentions, see Act to Regulate Commerce, § 3; *Atchison, T. & S. F. R.* v. *Denver R. R.*, 110 U. S. 701; *Atlantic Coast Line* v. *North Carolina Corp. Com.*, 206 U. S. 1; *Brown* v. *Houston*, 114 U. S. 622; *Chicago, M. & St. P. Ry.* v. *Iowa*, 233 U. S. 334; *Coe* v. *Errol*, 116 U. S. 517; Constitution of the State of Louisiana, Arts. 263–286; *Grand Trunk Ry.* v. *Michigan*, 231 U. S. 457; *Diamond Match Co.* v. *Ontonagon*, 188 U. S. 82; *Dixon* v. *Central of Ga.*, 110 Georgia, 173; 35 S. E. Rep. 369; *Gulf & Santa Fe Ry.* v. *Texas*, 204 U. S. 403; *Hampton* v. *St. L., I. M. & S. Ry.*, 227 U. S. 456; *Louis. & Nash. R. R.* v. *Higdon*, 234 U. S. 592; *Louis. & Nash. R. R.* v. *Kentucky*, 161 U. S. 677; *McNeil* v. *Southern Ry.*, 202 U. S. 543; *Merchants' Assn.* v. *Penna. R. R.*, 23 I. C. C. 474; *Minnesota Rate Cases*, 230 U. S. 352; *M. L. &c. S. S. Co.* v. *R. R. Comm. of La.*, 109 Louisiana, 247; *Same* v. *Same*, 127 Louisiana, 636; *Mo. Pac. Ry.* v. *Larabee Mills*, 211 U. S. 612; *Mobile County* v. *Kimball*, 102 U. S. 586; *Penna. R. R.* v. *Knight*, 192 U. S. 27; *Pittsburg Coal Co.* v. *Bates*, 156 U. S. 577; *R. R. Comm. of La.* v. *Cumberland Tel. Co.*, 212 U. S. 414; *R. R. Comm. of La.* v. *K. C. S. Ry.*, 111 Louisiana, 33; *Cumberland Tel. Co.* v. *Tex. & Pac. Ry.*, 52 La. Ann. 1850; *Iowa* v. *C., M. & St. P. R.*, 33 Fed. Rep. 391; *St. L., S. &c. R. R.* v. *Peoria &c. Ry.*, 26 I. C. C. 226; *Tex. & Pac. Ry.* v. *R. R. Comm. of La.*, 192 Fed. Rep. 280; *S. C.*, 232 U. S. 338; *Thompson* v. *R. R. Comm. of La.*, 198 Fed. Rep. 691; *Wisconsin* v. *Jacobson*, 179 U. S. 287.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

After a full hearing and investigation the Railroad Commission of Louisiana, on August 8, 1903, promulgated the following, known as Order No. 295:

"No railroad company operating in the State of Louisiana shall refuse or decline to switch cars for any other railroad with which it connects or any shipper, or consignee, at rates approved or established by the Commission, whether such cars are to be loaded with freight to be shipped out of the State, or are loaded with freight shipped into the State. All tariffs for the 'service' of switching cars in the State of Louisiana, shall be filed with the Commission, within thirty days from the date of this order, and all the Commission's rules and orders relative to rates and changes in rates, will also apply to switching charges."

By a proceeding against the members of the commission, commenced in the United States Circuit Court, Eastern District of Louisiana, February 10, 1904, the appellant, a common carrier of freight and passengers operating lines in Louisiana, attacked the validity of this order upon the ground that it is an unlawful attempt to regulate interstate commerce and for other reasons, and prayed that defendants be restrained from enforcing it. Shortly thereafter a temporary injunction was granted to remain effective pending the cause or until otherwise directed; and on October 6, 1904, defendants answered denying all the alleged equities. The record discloses no further action by either party until April, 1913, when a rather meagre and unsatisfactory agreed statement of facts was filed. The trial court dismissed the bill without prejudice —January, 1914,—saying that the questions involved had been indirectly decided by this court in *Grand Trunk Ry.* v. *Michigan Railroad Commission,* 231 U. S. 457.

From this decree a direct appeal was taken and a supersedeas was allowed.

The extraordinary delay in bringing the cause to final hearing is not explained; and in the circumstances we deem it quite sufficient briefly to indicate and decide the controlling question.

With the consent of the proper local authorities appellant constructed and now operates at New Orleans extensive terminals including switch and side tracks, warehouses and yards. These are essential to the proper conduct of its large interstate and foreign business; and when it brings freight there the cars are placed on its various switch tracks to be unloaded by the consignees. At New Orleans physical connections exist between appellant's tracks and the lines of competitive railroads leading therefrom to many States; if Order No. 295 is enforced its switch tracks will be subjected to use by such railroads; more cars will pass over them; and its power to comply with obligations to patrons will be hindered. Together with the various railroads appellant has published and now has in effect terminal tariffs covering switching; these include no rates for transporting freight to or from the city "but simply cover the charges made for switching cars from the depot or yard of one railroad company to points on its terminals." Upon orders of the consignees certain switch movements are made entirely within the switching limits of the city between points one or both of which may be located upon the terminals of the Illinois Central, and for these charges are made varying according to distance with an addition of three dollars per car for rental. When a car loaded with interstate freight arrives at New Orleans the consignee is first notified that the contents are ready for delivery at the carrier's depot or warehouse. After calling and paying the charges he gives to the agent of the railroad transporting the shipment an order directing that the cars be switched and

placed on some terminal or industrial track for delivery. This order is then submitted to the Illinois Central Railroad and in due course is executed by it.

From the foregoing summary of the facts stipulated it fairly appears that obedience to Order No. 295 would require appellant, upon demand of a carrier or shipper and on terms fixed by the State Commission, to switch empty cars from any connection with a competing interstate railroad to a designated side track within its own terminals for the purpose of being loaded there with goods intended for interstate commerce, and when so loaded to move the same back to the competitor's line for continued transportation to another State. Likewise appellant would be required to accept from competing interstate lines at points within the city loaded cars brought from other States and place them on its own side track, although such track was the real destination contemplated at the time of the original shipment. Switching movements of this kind (we do not now inquire as to others) constitute a part of interstate commerce the regulation of which Congress has undertaken, and consequently the order of the State Commission transcends the limits of its powers.

When freight actually starts in the course of transportation from one State to another it becomes a part of interstate commerce. The essential nature of the movement and not the form of the bill of lading determines the character of the commerce involved. And generally when this interstate character has been acquired it continues at least until the load reaches the point where the parties originally intended that the movement should finally end. *McNeill* v. *Southern Railway*, 202 U. S. 543, 559; *Southern Pacific Terminal* v. *Interstate Commerce Commission*, 219 U. S. 498, 527; *Ohio Railroad Commission* v. *Worthington*, 225 U. S. 101, 110; *Texas & New Orleans Railroad* v. *Sabine Tram Co.*, 227 U. S. 111, 126; *Louisiana Railroad Commission* v. *Tex. & Pac. Ry.*, 229 U. S. 336, 341.

The contention for appellees that switching cars at junctions and terminals "is only interstate commerce when performed as a part of the interstate movement on a through rate or bill of lading under tariff authority" is contrary to the doctrine established by opinions of this court in the cases cited above. We cannot undertake as suggested to dissect the contested order and point out whether any part of it constitutes "a workable scheme for the regulation of intrastate traffic." Problems relating alone to commerce wholly within the State must be left to the discretion of the State Commission to be exercised upon a view of all existing, relevant facts and circumstances.

The present controversy is not controlled by *Grand Trunk Ry. v. Michigan Railroad Commission, supra.* The issues in the two cases are essentially different. There the attack was upon an order of the State Commission "suspensory only of the tariff of the appellants, not a final determination against it or of the conditions which might or might not justify it," and the question was "whether, under the statutes of the State of Michigan, appellants can be compelled to use the tracks it owns and operates in the city of Detroit for the interchange of intrastate traffic." The movement actually regulated was held to be intrastate commerce. It took place within Detroit but between points sufficiently far apart to constitute genuine transportation; and, treating it as a local matter, the Railway Company had applied special tariffs thereto until withdrawn because of disagreement with shippers and commission.

The original bill should have been sustained and a permanent injunction awarded. The decree below is accordingly reversed and the cause remanded for further proceedings in accordance with this opinion.

*Reversed.*