236 U.S. 157 (1915)
ILLINOIS CENTRAL RAILROAD COMPANY
v.
FUENTES ET AL., CONSTITUTING THE RAILROAD COMMISSION OF LOUISIANA.
No. 423.
Supreme Court of United States.
Argued January 8, 1915.
Decided February 1, 1915.
APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.
Mr. Blewett Lee, with whom Mr. Robert V. Fletcher, Mr. Hunter C. Leake and Mr. Gustave Lemle were on the brief, for appellant.
Mr. Wylie M. Barrow, with whom Mr. Ruffin G. Pleasant, Attorney General of the State of Louisiana, was on the brief, for appellees.
*161 MR. JUSTICE McREYNOLDS delivered the opinion of the court.
After a full hearing and investigation the Railroad Commission of Louisiana, on August 8, 1903, promulgated the following, known as Order No. 295:
"No railroad company operating in the State of Louisiana shall refuse or decline to switch cars for any other railroad with which it connects or any shipper, or consignee, at rates approved or established by the Commission, whether such cars are to be loaded with freight to be shipped out of the State, or are loaded with freight shipped into the State. All tariffs for the `service' of switching cars in the State of Louisiana, shall be filed with the Commission, within thirty days from the date of this order, and all the Commission's rules and orders relative to rates and changes in rates, will also apply to switching charges."
By a proceeding against the members of the commission, commenced in the United States Circuit Court, Eastern District of Louisiana, February 10, 1904, the appellant, a common carrier of freight and passengers operating lines in Louisiana, attacked the validity of this order upon the ground that it is an unlawful attempt to regulate interstate commerce and for other reasons, and prayed that defendants be restrained from enforcing it. Shortly thereafter a temporary injunction was granted to remain effective pending the cause or until otherwise directed; and on October 6, 1904, defendants answered denying all the alleged equities. The record discloses no further action by either party until April, 1913, when a rather meagre and unsatisfactory agreed statement of facts was filed. The trial court dismissed the bill without prejudice  January, 1914,  saying that the questions involved had been indirectly decided by this court in Grand Trunk Ry. v. Michigan Railroad Commission, 231 U.S. 457. *162 From this decree a direct appeal was taken and a supersedeas was allowed.
The extraordinary delay in bringing the cause to final hearing is not explained; and in the circumstances we deem it quite sufficient briefly to indicate and decide the controlling question.
With the consent of the proper local authorities appellant constructed and now operates at New Orleans extensive terminals including switch and side tracks, warehouses and yards. These are essential to the proper conduct of its large interstate and foreign business; and when it brings freight there the cars are placed on its various switch tracks to be unloaded by the consignees. At New Orleans physical connections exist between appellant's tracks and the lines of competitive railroads leading therefrom to many States; if Order No. 295 is enforced its switch tracks will be subjected to use by such railroads; more cars will pass over them; and its power to comply with obligations to patrons will be hindered. Together with the various railroads appellant has published and now has in effect terminal tariffs covering switching; these include no rates for transporting freight to or from the city "but simply cover the charges made for switching cars from the depot or yard of one railroad company to points on its terminals." Upon orders of the consignees certain switch movements are made entirely within the switching limits of the city between points one or both of which may be located upon the terminals of the Illinois Central, and for these charges are made varying according to distance with an addition of three dollars per car for rental. When a car loaded with interstate freight arrives at New Orleans the consignee is first notified that the contents are ready for delivery at the carrier's depot or warehouse. After calling and paying the charges he gives to the agent of the railroad transporting the shipment an order directing that the cars be switched and *163 placed on some terminal or industrial track for delivery. This order is then submitted to the Illinois Central Railroad and in due course is executed by it.
From the foregoing summary of the facts stipulated it fairly appears that obedience to Order No. 295 would require appellant, upon demand of a carrier or shipper and on terms fixed by the State Commission, to switch empty cars from any connection with a competing interstate railroad to a designated side track within its own terminals for the purpose of being loaded there with goods intended for interstate commerce, and when so loaded to move the same back to the competitor's line for continued transportation to another State. Likewise appellant would be required to accept from competing interstate lines at points within the city loaded cars brought from other States and place them on its own side track, although such track was the real destination contemplated at the time of the original shipment. Switching movements of this kind (we do not now inquire as to others) constitute a part of interstate commerce the regulation of which Congress has undertaken, and consequently the order of the State Commission transcends the limits of its powers.
When freight actually starts in the course of transportation from one State to another it becomes a part of interstate commerce. The essential nature of the movement and not the form of the bill of lading determines the character of the commerce involved. And generally when this interstate character has been acquired it continues at least until the load reaches the point where the parties originally intended that the movement should finally end. McNeill v. Southern Railway, 202 U.S. 543, 559; Southern Pacific Terminal v. Interstate Commerce Commission, 219 U.S. 498, 527; Ohio Railroad Commission v. Worthington, 225 U.S. 101, 110; Texas & New Orleans Railroad v. Sabine Tram Co., 227 U.S. 111, 126; Louisiana Railroad Commission v. Tex. & Pac. Ry., 229 U.S. 336, 341.
*164 The contention for appellees that switching cars at junctions and terminals "is only interstate commerce when performed as a part of the interstate movement on a through rate or bill of lading under tariff authority" is contrary to the doctrine established by opinions of this court in the cases cited above. We cannot undertake as suggested to dissect the contested order and point out whether any part of it constitutes "a workable scheme for the regulation of intrastate traffic." Problems relating alone to commerce wholly within the State must be left to the discretion of the State Commission to be exercised upon a view of all existing, relevant facts and circumstances.
The present controversy is not controlled by Grand Trunk Ry. v. Michigan Railroad Commission, supra. The issues in the two cases are essentially different. There the attack was upon an order of the State Commission "suspensory only of the tariff of the appellants, not a final determination against it or of the conditions which might or might not justify it," and the question was "whether, under the statutes of the State of Michigan, appellants can be compelled to use the tracks it owns and operates in the city of Detroit for the interchange of intrastate traffic." The movement actually regulated was held to be intrastate commerce. It took place within Detroit but between points sufficiently far apart to constitute genuine transportation; and, treating it as a local matter, the Railway Company had applied special tariffs thereto until withdrawn because of disagreement with shippers and commission.
The original bill should have been sustained and a permanent injunction awarded. The decree below is accordingly reversed and the cause remanded for further proceedings in accordance with this opinion.
Reversed.