303 A.2d 361.

MART REALTY, INC. *vs.* JOHN H. NORBERG, *Tax Administrator.*

APRIL 18, 1973.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. Mart Realty, Inc. filed this petition for certiorari under G. L. 1956 (1969 Reenactment) §42-35-16, to review a judgment entered by a justice of the Superior Court affirming a decision of the respondent tax administrator which upheld a tax assessed by the Rhode Island Division of Taxation against the petitioner. We granted the writ and pursuant thereto the pertinent records have been certified to this court.

The facts are not in dispute. We shall refer only to such facts as are pertinent to the determination of this case. Mart Realty, Inc., the taxpayer here, is the wholly-owned subsidiary of Mammoth Mart, Inc., a Delaware corporation, hereinafter referred to as "Mammoth," with executive offices in East Bridgewater, Massachusetts. During the period April 1, 1967 to August 31, 1970, Mammoth's advertising department in East Bridgewater ordered from a printer doing business in Lowell, Massachusetts, certain advertising circulars. After the circulars were printed, they were sent by the printer via an independent carrier chosen by the printer, to Mailways, Inc., hereinafter "Mailways," a direct mailing firm in Manchester, New Hampshire, for the purpose of being mailed to Rhode Island residents who reside in the taxpayer's area. At Mailways the circulars were addressed to "Occupants" — not to specific individuals — followed by such occupant's address in Rhode Island. The mailing lists from which the addresses were taken are the

exclusive property of, and are controlled by Mailways. Neither the taxpayer nor Mammoth possessed any ownership interest in or exercised any dominion or control over those mailing lists. Mammoth does reserve the right to limit the geographical area or areas to be covered by any one mailing distribution. After the circulars were addressed, they were delivered by Mailways directly to the United States post office in Manchester, New Hampshire, postmarked third-class mail, and sent under bulk mailing rates to the Rhode Island residents. When the circulars were delivered to the United States post office and deposited in the United States mail in Manchester, they were beyond the control of Mammoth, the taxpayer and Mailways, but are subject, however, to postal regulations in effect at such time of delivery and deposit. Once a circular is placed in the post office box of the boxholder or delivered to the rural free delivery box, or put in the mail slot at the house, neither Mammoth nor the taxpayer owns the circular.

The requisitioning, printing, and sending of the circulars were done under the sole direction of Mammoth at East Bridgewater. All of the costs for the circulars were billed initially to Mammoth who subsequently billed taxpayer the full costs thereof. This amounted to $177,842.83 and is the tax base upon which the Division of Taxation levied a use tax in the amount of $10,724.87, exclusive of interest and penalties.

The taxpayer, being aggrieved by the assessment made by the Division of Taxation, requested a hearing in accordance with the provisions of G. L. 1956 (1970 Reenactment) §44-19-17.[1] After such hearing the tax administrator filed

---

[1]General Laws 1956 (1970 Reenactment) §44-19-17 reads as follows:

"Hearing by administrator on application.—Any person aggrieved by any assessment, deficiency or otherwise, shall notify the tax administrator in writing within ten (10) days from the date of mailing by the tax administrator of the notice of such assessment and shall request a hear-

a written decision in compliance with the requirements of §42-35-12. On the basis of certain findings of fact made by him, he held that the excise tax imposed by §§44-18-20 and 44-18-21[2] is a tax imposed on the use, storage or other consumption, and that in this case it was not imposed on storage or use, but on consumption. He affirmed the tax assessed by the Division of Taxation.

Thereafter the taxpayer, being aggrieved by the decision of the tax administrator, filed a petition in the Superior Court under §42-35-15 alleging that the assessment was erroneous and praying for relief therefrom. In his decision affirming the action of the tax administrator, the trial justice said that each of the following would constitute consumption, namely, (1) the receipt and reading of these circulars by an occupant, (2) the receipt and discarding of the circulars, and (3) the receipt and tearing up or destruction of the circulars by the ultimate occupant. He held that the tax administrator was correct in determining that consumption took place in the state.

He then said that the real issue was whether this consumption was sufficiently related to this taxpayer to bring

---

ing relative thereto; and the tax administrator shall, as soon as practicable, fix a time and place for such hearing and shall, after such hearing, determine the correct amount of the tax, interest, and penalties; provided, that when a jeopardy assessment or determination shall be made such hearing shall not be had unless the jeopardy assessment with penalties and interest shall have been paid. The tax administrator may decrease or increase the amount of any determination.

[2]General Laws 1956 (1970 Reenactment) §44-18-20 in pertinent part reads as follows:

"An excise tax is hereby imposed on the storage, use, or other consumption in this state of tangible personal property * * * purchased from any retailer at the rate of five per cent (5%) of the sale price of the property."

General Laws 1956 (1970 Reenactment) §44-18-21 provides that

"Every person storing, using, or otherwise consuming in this state tangible personal property * * * is liable for the use tax."

about a taxable event for which the taxpayer would be responsible.

He also stated that the following were questions of fact, namely, (1) whether these materials were otherwise consumed in Rhode Island, (2) whether the taxpayer exercised dominion or control over these materials within the state of Rhode Island, and (3) whether this taxpayer was a part of the consumption process within the state of Rhode Island.

The trial justice then went on to say that one may consume within a state materials which are under his or its control, without direct physical contact with those materials; that in this case the printer, Mailways, and the United States mails were all acting as agents of the taxpayer in bringing about ultimate delivery of these materials to an occupant residing in this state where the ultimate consumption would be obtained; and that the fact that Mammoth, the parent corporation, set these proceedings in motion was also not determinative because it was acting for and on behalf of its subsidiary, which was ultimately billed for this service.

The trial justice said further that the taxpayer here brought about a consumption for its benefit, directed through its agents each step of the proceeding, with an ultimate end in view which was in every respect within its authority and control; that the selection of the occupants and determination of the method of delivery were basically made by the taxpayer through its agents; and that its agents followed the instructions of the taxpayer without substantial deviations therefrom in relation to matters in which the taxpayer had an interest.

He concluded that the consumption by the taxpayer consisted of bringing about this delivery to Rhode Island occupants; that its method of achieving this, in utilizing out-of-state agents, was not determinative; and, therefore, he

sustained the finding of the tax administrator that these materials were otherwise consumed within this state by the taxpayer through and by the use of its various out-of-state agents.

The taxpayer brought this petition for certiorari to review the final judgment entered in the Superior Court.

The petitioner has briefed and argued this case under three main points. The first raises the narrow issue whether the trial justice erred in finding that there had been a consumption in this state by the taxpayer of the materials in question sufficient to warrant the assessment of the tax imposed by §44-18-20. Under its second and third points petitioner raises certain constitutional questions which we will not reach because of our conclusion that the trial justice erred in finding that there had been a consumption in this state by the taxpayer. For the reasons which follow we reverse the judgment entered in the Superior Court.

We note at the outset that the "use" and "storage" provisions of §§44-18-20 and 44-18-21 do not apply here. The only question before us is whether there has been "other consumption" in this state of tangible personal property purchased from any retailer by the taxpayer. Sections 44-18-9 and 44-18-10 define the words "storage" and "use," but contain no definition of the words "other consumption."

We agree with the trial justice's statement that the following situations would constitute consumption, namely, "the receipt and reading," "the receipt and discarding" and "the receipt and tearing up or destruction of the circulars by the ultimate occupant." In each of these instances receipt of the materials, that is, physical possession, is an integral part of the consumption. While all of these definitions may apply to the ultimate recipient, the question remains whether they apply to petitioner here. In other words, even if we assume there was a consumption in Rhode

Island, the question remains whether there was a consumption in this state by petitioner who never "received," "tore up," "destroyed," "discarded" or "wore away the advertising circulars." Since petitioner never received the circulars in this state, we fail to see how petitioner could be a "person * * * otherwise consuming in this state."

The trial justice referred to *Hoffman-LaRoche, Inc.* v. *Porterfield,* 16 Ohio St.2d 158, 243 N.E.2d 72 (1968). Although he said that the Ohio case differed factually somewhat from the case at bar, he was frank to admit that the Ohio court's decision was contrary to that of the tax administrator here, and that it squarely held that the materials involved in that case were not stored, used or otherwise consumed in the state of Ohio.

The facts in the *Hoffman-LaRoche* case, insofar as pertinent here, are as follows. The taxpayer was a foreign corporation licensed to do business in Ohio. It was engaged in the manufacture and sale of chemical and pharmaceutical products. It maintained its principal offices and plant in New Jersey and had warehouses in several states other than Ohio. Roche Laboratories is Hoffman-LaRoche's chemical and pharmaceutical division, and Roche Laboratories division products were promoted by Hoffman-LaRoche by periodic mailings from outside Ohio of samples and other promotional materials to various doctors and hospitals in Ohio. The tax commissioner levied a use-tax assessment based upon the value of all promotional materials disseminated in Ohio through the mail by Hoffman-LaRoche during the audit period in question. The taxpayer, Hoffman-LaRoche, took an appeal to the Board of Tax Appeals which held that the promotional materials distributed by out-of-state mailing was not taxable. The tax commissioner took an appeal from the decision of the Board of Tax Appeals. The relevant Ohio statutes are identical to the statutes involved in

the case at bar. In affirming the decision of the Board of Tax Appeals, the Ohio Supreme Court said:

> "We conclude, as did the Board of Tax Appeals, that, as much as is reasonably possible under existing postal regulations, the appellee divested itself of ownership, possession and control of its mailed promotional materials outside Ohio. Accordingly, it is reasonable to conclude that the gift of these samples and advertising materials took place outside Ohio and such material was not stored, used or otherwise consumed by the appellee in the state of Ohio within the meaning of those words as used in Section 5741.02 Revised Code." *Hoffman-LaRoche, Inc.* v. *Porterfield, supra* at 162, 243 N.E.2d at 74-75.

We believe that the reasoning of the court in the Ohio case is applicable here.[3]

On the view we take we need not pass on the question of whether the tax administrator violated his own regulations and rules under the "sales and use tax [A]ct." We hold that under the Act, as presently written, receipt of the tangible personal property by the taxpayer in this state is a necessary, integral and indispensable part of "other consumption" for the purposes of the use tax imposed by §44-18-20. The language of §44-18-20 is clear and unambiguous. So is the language of §44-18-21 which imposes liability for the use tax on "[e]very person * * * otherwise consuming in this state tangible personal property * * *."

The trial justice concluded that " * * * the consumption by the taxpayer in this instance consisted of bringing about this delivery to Rhode Island occupants * * *." We find nothing in the statute which authorizes such a conclusion. As we have previously stated, §§44-18-20 and 44-18-21 are clear and unambiguous. Section 44-18-20 imposes an ex-

---

[3]*See also Montgomery Ward and Co.* v. *Department of Revenue*, Kentucky Board of Tax Appeals No. K67-R-9, Order K-1172, June 26, 1968, C.C.H. 201-035.

cise tax " * * * on the storage, use, or other consumption in this state of tangible personal property * * * purchased from any retailer * * * ." And §44-18-21 imposes liability for such tax upon "[e]very person * * * otherwise consuming in this state tangible personal property * * *." Nowhere does the statute mention "the bringing about" of the consumption. The statute mentions only consumption.

We are satisfied that our conclusion that the statute contemplates "consumption" and not the bringing about of the consumption is dispositive of this case. However, even if we assume that the bringing about of the consumption constitutes a taxable event under the statute, the consumption attributable to the taxpayer would have to take place "in this state" for the statute to apply. If the bringing about occurred out of state there would still be no tax liability on the taxpayer since it is an agreed fact that it never physically possessed the circulars in Rhode Island. The trial justice stated that " * * * one may consume within a state, materials which are under his or its control, without direct physical contact with those materials." Therefore, if there was control by the taxpayer within this state, there would be a taxable consumption under the statute.

However, the trial justice said that " * * * whether the taxpayer exercised dominion or control over these matters within the State of Rhode Island or whether this taxpayer was a part of the consumption process within the State of Rhode Island is to an extent a question of fact, question of ultimate fact to be inferred from the stipulated facts * *. *." It was a stipulated fact that once the items were deposited in the United States mail in Manchester, New Hampshire, they were beyond the control of Mammoth and Mailways, subject to the prevailing postal regulations. This stipulation of fact was binding upon the parties and was part of the record on review before the trial justice. We agree with the taxpayer's argument that since the applica-

bility of the sales and use tax Act depends upon petitioner having control in this state, and since the question of control is a question of fact to which the parties stipulated their stipulation is conclusive of the issue of control and was binding upon the trial justice. On this record, in view of such stipulation, it would be unreasonable to infer that there was control in Rhode Island.

The trial justice's conclusion that the printer, Mailways, and the United States mails were all acting as agents of the taxpayer, and that with the aid of the ultimate recipients of the circulars, the taxpayer "consumed" the circulars is not supported by the record. But even if we assume that the stipulation referred to above was not binding on the issue of control, the taxpayer did not have sufficient control of the circulars in this state to constitute a taxable consumption under the statute. The minimal control Mailways had over the circulars once they were in the mail was not sufficient. *See Hoffman-LaRoche, Inc.* v. *Porterfield, supra,* where the court said at 162, 243 N.E.2d at 74, that although it appeared that third class matters may be recalled by the sender, recall would be impractical and expensive since there must be a formal application and the expenses of recall are chargeable to the mailer. The reasoning of the Ohio court applies here, where the record shows over 150,000 advertising circulars were mailed out to Rhode Islanders in a typical mailing.

On the basis of the record before us we must conclude that there was no control over the circulars once they were deposited in the United States mail in Manchester, New Hampshire, and there was no agency relationship between the taxpayer and the United States mails which resulted in the taxpayer "otherwise consuming" the circulars "in this state." We agree that the trial justice was called upon only to determine whether the tax administrator had acted in an unreasonable, clearly erroneous, or unlawful fashion in as-

sessing the facts in this case but, as we have stated, it was error to impose the tax in question on this taxpayer and therefore the trial justice should have reversed the decision of the tax administrator.

The petition for certiorari is granted, the judgment entered in the Superior Court is quashed, and the case is remitted to that court for the entry of judgment in accordance with this opinion.

Mr. Justice Powers participated in the decision but retired prior to its announcement. Mr. Justice Doris did not participate.

*Tobin, Decof, LeRoy & Silverstein, Michael A. Silverstein, Matthew T. Marcello, III,* for plaintiff.

*Richard J. Israel,* Attorney General, *W. Slater Allen, Jr.,* Special Asst. Attorney General, *Perry Shatkin,* Chief Legal Officer, Division of Taxation, for defendant.