# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### September 21, 2021 Session

## BEARING DISTRIBUTORS, INC. v. DAVID GERREGANO, COMMISSIONER OF REVENUE, STATE OF TENNESSEE

### Appeal from the Chancery Court for Davidson County
No. 17-1261-IV          Russell T. Perkins, Chancellor

_____

### No. M2020-01075-COA-R3-CV

_____

In this case involving the plaintiff corporation's challenge to the business tax assessed against it by the defendant, Tennessee Commissioner of Revenue David Gerregano ("Commissioner"), the parties filed competing motions for summary judgment. Following a hearing, the trial court upheld the business tax assessed against the plaintiff at a retail tax rate, rather than the lower wholesale tax rate that the plaintiff argued was applicable, and which the plaintiff had paid. Granting summary judgment in favor of Commissioner, the trial court awarded to Commissioner a judgment for unpaid taxes in the amount of $141,004.70 plus interest from the date of the adjusted assessment. The plaintiff prematurely appealed the grant of summary judgment prior to the trial court's entry of a post-judgment order awarding statutory attorney's fees and expenses to Commissioner. Following entry of the post-judgment order, this appeal proceeded concerning the summary judgment order. Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. McCLARTY and KRISTI M. DAVIS, JJ., joined.

G. Michael Yopp and Christopher A. Wilson, Nashville, Tennessee, for the appellant, Bearing Distributors, Inc.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Jonathan N. Wike, Senior Assistant Attorney General, for the appellee, David Gerregano, Commissioner of Revenue, State of Tennessee.

**OPINION**

**I. Factual and Procedural Background**

The plaintiff, Bearing Distributors, Inc. ("BDI"), initiated this action by filing a complaint in the Davidson County Chancery Court ("trial court") on November 22, 2017, pursuant to Tennessee Code Annotated § 67-1-1801, naming Commissioner as the defendant and protesting the business tax levied against BDI for the time period spanning April 1, 2006, through March 31, 2012 ("the Audit Period").[1] According to the complaint, BDI was organized as an Ohio corporation, which during the Audit Period operated in three Tennessee locations: Nashville, Knoxville, and Clarksville. BDI described itself in the complaint as "engage[d] in the business of selling OEM [original equipment manufacturer] products and industrial maintenance, repair, and operations products including, but not limited to, bearings, electric motors, industrial supplies and tools, etc." BDI averred that it "typically sells its products to manufacturing customers, who incorporate purchased products into machinery and equipment utilized during the manufacturing process." BDI further averred that the Tennessee Department of Revenue ("the Department") had classified it as a Class 2 business taxpayer under Tennessee Code Annotated § 67-4-708(2) (Supp. 2021) of the Business Tax Act with an applicable wholesale tax rate of 3/80 of 1% or retail tax rate of 3/20 of 1%. *See* Tenn. Code Ann. §

---

[1] Tennessee Code Annotated § 67-1-1801 (Supp. 2021) provides in pertinent part:

(a)(1)  In all cases in which any officer, charged by law with the authority to assess taxes that are collected or administered by the commissioner of revenue, shall finally assess a tax alleged or claimed to be due, if the taxpayer against whom the final assessment is made believes the final assessment to be unjust, illegal or incorrect, the taxpayer's remedies shall be as follows:

　　　　(A)  The taxpayer may pay the tax and file a claim for refund of the tax and proceed as provided in this part; or

　　　　(B)  The taxpayer may file suit against the commissioner in chancery court in the appropriate county in this state, challenging all or any portion of the final assessment of such tax, including any interest and penalty associated with the tax. Until the earlier of the expiration of ninety (90) days after an assessment becomes final, or the filing of a suit by the taxpayer as provided in subsection (b), no levy as defined in § 67-1-1404 shall be made, begun or prosecuted by the commissioner. The commissioner may, however, initiate and pursue any other action to collect an assessed deficiency under part 14 of this chapter or otherwise, including, but not limited to, the filing of a notice of lien as provided in § 67-1-1403 and the collection of a jeopardy assessment.

67-4-709(2) (Supp. 2021). It is undisputed that BDI paid state business taxes during the Audit Period but that it did so at the wholesale rate.

The Department performed a business tax audit, completed in March 2013, on BDI's three Tennessee locations and applied a retail rate to assess $121,352.35 in additional taxes due for the Audit Period, plus $28,795.93 in interest for a total assessment in the amount of $150,148.28. At BDI's timely request, Commissioner conducted an informal conference pursuant to the version of Tennessee Code Annotated § 67-1-1801(c)(3) (2013) then in effect, which provided in relevant part that during the ninety-day period allowed for filing suit and before the suit was filed, the taxpayer had the right, upon written request, "to an informal conference with the commissioner to discuss the assessment and to present such matters as may be relevant to the assessment."[2] Following the informal conference, the Department affirmed the auditor's findings except as to the Nashville location for the years 2009, 2010, and 2012, for which BDI was classified as a wholesaler. Otherwise, BDI's taxation as a retailer was affirmed. These findings were memorialized in a letter issued by the hearing officer on September 28, 2017. On October 20, 2017, the Department issued an adjusted assessment against BDI for the Audit Period in the total amount of $141,004.70, representing $89,305.48 in tax liability and $51,699.22 in interest to that point.

In its complaint filed in the trial court, BDI primarily alleged that Commissioner had misinterpreted the Business Tax Act in assessing BDI's taxes at the retail rate for the Audit Period. In its final order, the trial court succinctly summarized the three grounds raised in the complaint as follows:

(1)     [T]he classification of the sale of industrial materials as wholesale sales in Tenn. Code Ann. § 67-4-702(a)[(24)](B) [(2013)] should be construed to include items sold to manufacturers that do not become component parts of manufactured products (Count I);

(2)     even if Tenn. Code Ann. § 67-4-702(a)[(24)](B) (2013)] is construed to require that items become component parts of manufactured products to be considered industrial materials, the overall purpose of the wholesale classification supports including other, non-component items because their cost is incorporated into the cost of manufactured items (Count II); and

_____

[2] Effective January 1, 2015, Tennessee Code Annotated § 67-1-1801 has been amended to delete subsection (c)(3) and set forth an amended procedure for informal conferences. *See* 2014 Tenn. Pub. Acts., Ch. 854, § 9 (H.B. 1431).

(3) the Department's position violates equal protection and due process (Count III).

BDI's constitutional argument, "Count III" above, was based on its contention that Commissioner's interpretation of the statutory definitions at issue placed an impossible burden on BDI to establish itself as qualified to pay taxes at the wholesale rate. BDI also requested reasonable attorney's fees pursuant to Tennessee Code Annotated § 67-1-1803(d).[3]

As the trial court noted in its final order, the Audit Period at issue in this case spanned several amendments to Tennessee Code Annotated § 67-4-702 that resulted in the renumbering of the statutory definitions for "wholesale sale" or "sale at wholesale" and "wholesaler." Throughout the record, the trial court, as has BDI on appeal, referred to the version of the statute in effect in 2009, with the relevant definitions codified at § 67-4-702(a)(23) and (24) (Supp. 2009). The statute was amended in 2009 with an important substantive change to the definition of "wholesaler." Prior to 2009, "wholesaler" was defined as "any person engaged in the business of making wholesales or sales at wholesale." Tenn. Code Ann. § 67-4-702(23) (2006). Effective July 1, 2009, the General Assembly amended the definition of "wholesaler" to mean "any person primarily engaged in the business of making wholesale sales," with "primarily" specifically defined for purposes of the statutory subsection as meaning that "more than fifty percent (50%) of the taxable gross sales of the business are wholesale sales." *See* 2009 Tenn. Pub. Acts, Ch. 530, § 69 (S.B. 2318).

It is undisputed that the substantive 2009 amendment to the definition of wholesaler applies in this case. In his appellate brief, Commissioner states that the version of the statute in effect in 2012, with the definitions of wholesale sale and wholesaler recodified at § 67-4-702(a)(24) and (25) (2013) respectively, should apply. Inasmuch as the Audit Period ended in 2012 and the relevant definitions have remained substantively consistent between the versions in effect in 2009 and 2012, *see, e.g., Sec.*

---

[3] The version of Tennessee Code Annotated § 67-1-1803(d) (2013) in effect at the time this action was initiated provided in pertinent part:

> The court shall award to the prevailing party reasonable attorneys' fees and expenses of litigation up to twenty percent (20%) of the amount assessed or denied, including interest after payment. For purposes of this subsection (d), attorneys' fees shall not exceed fees calculated on the basis of reasonable hourly rates multiplied by a reasonable number of hours expended in the case and shall not be calculated by application of any premium, enhancement, or contingency.

The subsection has since been amended to insert the word, "finally," between "amount" and "assessed" in the first sentence. *See* 2014 Tenn. Pub. Acts, Ch. 854, § 10 (H.B. 1431).

*Equip. Supply*, 520 S.W.3d 18, 21 n.5 (Tenn. Ct. App. 2016), for ease of reference, we will refer throughout this Opinion to the version of the statute in effect in 2012, wherein the definitions of wholesale sales and wholesaler were codified at § 67-4-702(a)(24) and (25) (2013) respectively.[4]

Commissioner filed an answer to the complaint and a counterclaim on January 29, 2018, arguing against BDI's interpretation of the subject statutory definition and requesting a judgment in the previously assessed amount of $141,004.70, "plus additional statutory interest continuing to accrue, attorney's fees and expenses as provided under Tenn. Code Ann. § 67-1-1803(d) . . . ." BDI filed a reply to the counterclaim, requesting that the counterclaim be dismissed and that BDI be awarded attorney's fees and litigation expenses pursuant to Tennessee Code Annotated § 67-1-1803(d).

On July 27, 2018, Commissioner filed a motion for summary judgment, asserting that BDI was "not entitled to the lower business tax rate for sales at wholesale established in Tenn. Code Ann. § 67-4-709(2) because the items [BDI] sells to manufacturers do not become component parts of articles manufactured by [BDI's] customers for retail sale." In his memorandum in support of the summary judgment motion, Commissioner posited that "[t]his case turns solely on a question of statutory interpretation with a straightforward answer." BDI filed a response opposing Commissioner's summary judgment motion, and Commissioner filed a reply.

On October 5, 2018, BDI filed a motion for summary judgment "on the grounds that the assessment of business tax imposed upon BDI by [Commissioner] improperly classifies BDI's sales to manufacturers as retail and, under the position advanced by [Commissioner] in this case, imposes an impossible burden upon BDI in contravention of BDI's constitutional rights." BDI requested that the trial court enter an order abating the business tax assessment against it and finding BDI to be the prevailing party under Tennessee Code Annotated § 67-1-1803(d). Among the supporting materials filed by BDI was the deposition of Larry Wayne Robertson, a tax auditor supervisor for the Department who, in a previous role as a tax auditor, had been assigned to review the audit upon BDI's request for an informal conference. Commissioner filed a response to BDI's summary judgment motion. Subsequently, BDI filed an amended response brief in opposition to Commissioner's summary judgment motion and a reply to Commissioner's response to BDI's motion, and Commissioner filed a reply to BDI's amended response.

---

[4] We note that effective May 20, 2015, these subsections have been recodified again, with no substantive change, at Tennessee Code Annotated § 67-4-702(a)(26) and (27) (Supp. 2021) respectively. *See* 2015 Tenn. Pub. Acts, Ch. 514, § 3 (H.B. 644).

Following a hearing conducted on April 5, 2019, the trial court entered its order granting summary judgment in favor of Commissioner on July 14, 2020. As pertinent to the issues raised on appeal, the trial court found that (1) under Tennessee Code Annotated § 67-4-702(a)(24), a "'component part' means a component part of the manufactured product, not a component part of manufacturing equipment" and sale of a product that becomes part of manufacturing equipment thereby fails to qualify as a wholesale sale; (2) this interpretation does not place an impossible burden on BDI as the taxpayer; (3) generally accepted accounting principles do not apply to the Business Tax Act and so do not affect interpretation of this statutory section; and (4) no genuine issues of material fact precluded an award of summary judgment in favor of Commissioner.

BDI filed a premature notice of appeal concerning the summary judgment order with this Court on August 12, 2020. BDI subsequently filed a "supplement" to its notice of appeal on February 10, 2021, also requesting that the record be supplemented with an order that had been entered by the trial court on December 22, 2020. In this order, the trial court had awarded to Commissioner attorney's fees and expenses upon finding Commissioner the prevailing party pursuant to Tennessee Code Annotated § 67-1-1803(d). Although the court found that Commissioner had incurred $53,891.00 in attorney's fees and expenses, the court awarded $32,410.48 as the statutory twenty-percent cap on attorney's fees and expenses. *See* Tenn. Code Ann. § 67-1-1803(d). This Court then treated BDI's premature notice of appeal as timely pursuant to Tennessee Rule of Appellate Procedure 4(d).

## II. Issues Presented

BDI presents four issues on appeal, which we have restated slightly as follows:

1. Whether the trial court erred by finding that BDI's sales of materials to manufacturers for incorporation into manufacturing machinery failed to qualify as wholesale sales under the Tennessee Business Tax Act.

2. Whether the trial court erred by finding that Tennessee Code Annotated § 67-4-702(a)(24) and (25) did not place an impossible burden upon BDI to establish wholesaler status in light of the trial court's ruling that BDI's sales to manufacturers for incorporation into manufacturing machinery failed to qualify as wholesale sales for Tennessee business tax purposes.

3. Whether the trial court erred by declining to apply generally accepted accounting principles to find that products sold to

manufacturers for incorporation into manufacturing machinery become component parts of finished products.

4.    Whether the trial court erred by finding that no genuine issues of material fact precluded a grant of summary judgment in favor of Commissioner.

## III.  Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)).  As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied."  *Rye*, 477 S.W.3d at 250.  "Statutory construction is a question of law that is reviewable on a de novo basis without any presumption of correctness."  *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009).

As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.  We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis.  Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial."  Tenn. R. Civ. P. 56.03.  "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record."  *Id.*  When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03.  "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere

allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. [574,] 586, 106 S. Ct. 1348, [89 L.Ed.2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65. "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. The Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

## IV. Wholesale Sales under the Business Tax Act

BDI contends that the trial court erred by finding that its sales of materials to manufacturers for incorporation into manufacturing machinery failed to qualify as wholesale sales pursuant to the statutory definition provided by the Business Tax Act. Commissioner contends that BDI "misreads" the statutory definition because to qualify as wholesale sales under the Business Tax Act, industrial materials must become component parts of finished products. Upon careful review, we determine that the trial court did not err in its interpretation of the statutory definition of wholesale sales.

In conducting this analysis, we adhere to the following longstanding principles of statutory construction:

> When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.,* 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.,* 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson,* 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.,* 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool,* 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson,* 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga,* 172 Tenn. 505, 114 S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State,* 908 S.W.2d 923, 926 (Tenn. 1995).

*In re Estate of Tanner*, 295 S.W.3d at 613-14. Specifically concerning tax statutes, our Supreme Court has elucidated:

> In addition to general principles of statutory construction, we must also consider the rules of construction specifically applicable to tax statutes. Statutes imposing a tax are to be construed strictly against the taxing authority. *See Covington Pike Toyota, Inc. v. Cardwell,* 829 S.W.2d 132, 135 (Tenn. 1992). However, statutes granting exemptions from taxation are construed strictly against the taxpayer. *Tibbals Flooring Co. v. Huddleston,* 891 S.W.2d 196, 198 (Tenn. 1994); *Covington Pike Toyota,* 829 S.W.2d at 135.

*Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).

The Business Tax Act is codified at Tennessee Code Annotated §§ 67-4-701 to 67-4-730 (2013 & Supp. 2021). Although the Business Tax Act provides for a lower tax rate for wholesale sales in comparison to retail sales, the statute at issue does impose a tax rather than operating to provide an exemption. For this reason, we are to construe the statute strictly against the taxing authority, in this instance, Commissioner. However, we agree with Commissioner's assertion that because qualifying as a wholesaler would entitle BDI to a preferential tax rate, BDI as the taxpayer bears the burden of establishing that "more than fifty percent (50%) of the taxable gross sales of [its] business are wholesale sales." *See* Tenn. Code Ann. § 67-4-702(a)(25); *Shearin v. Woods*, 597 S.W.2d 895, 896 (Tenn. 1980) (in the context of the Retailers' Sales Tax Act, noting that because the plaintiff was claiming the applicable "preferential rate" for "industrial machinery" as opposed to "other tangible property," the plaintiff bore "the burden of establishing that his equipment or machinery [met] the requirements of the statutory definition").

Specifically regarding the Business Tax Act, this Court has explained:

> The Business Tax Act is a component of Tennessee's scheme of privilege and excise taxes. *AAbakus, Inc. v. Huddleston*, No. 01A-01-9505-CH-00215, 1996 WL 548148, at *2 (Tenn. Ct. App. Sept. 25, 1996). Under the Business Tax Act, businesses are classified according to their "dominant business activity," which is defined as "the business activity that is the major and principal source of taxable gross sales of the business." Tenn. Code Ann. § 67-4-702(a)(5); *Najo Equip. Leasing, LLC v. Comm'r of Revenue*, 477 S.W.3d 763, 767 (Tenn. Ct. App. 2015). These statutory classifications determine the applicable tax rate to be imposed on a particular business. *AAbakus, Inc.*[,] 1996 WL 548148, at *2.

*Sec. Equip. Supply*, 520 S.W.3d at 20-21. As in *Sec. Equip. Supply*, the distinction drawn in the statute "between 'wholesale sales' and 'retail sales,' with the tax rate for wholesale sales being less than that for retail sales," is central to the instant issue in this case. *See id.* at 21 (citing Tenn. Code Ann. § 67-4-709).

The statutory definition in question, Tennessee Code Annotated § 67-4-702(a)(24), provides in relevant part:

(A)     "Wholesale sale" or "sale at wholesale" means any sale to a retailer for resale;

(B)     "Wholesale sale" or "sale at wholesale" includes <u>the sale of industrial materials for future processing, manufacture or conversion into articles of tangible personal property for resale where the industrial materials become a component part of the finished product</u>. This subdivision (24)(B) shall not apply to raw or unprocessed agricultural products; . . .

(Emphasis added.)  The definition of "sales for resale" is further set forth in Rule 47 of the Business Tax Rules and Regulations ("Rule 47").  *See* Tenn. Comp. R. & Regs. 1320-04-05-.47.

In this case, neither party argues that the statutory definition of "wholesale sale" is ambiguous.  Commissioner maintains, and the trial court ultimately found, that within the plain meaning of the statute, the closing language in § 67-4-702(a)(24)(B), "into articles of tangible personal property for resale where the industrial materials become a component part of the finished product," modifies each item in the three-part antecedent list, "processing, manufacture or conversion," such that industrial materials must become component parts of finished products for resale in order to qualify as wholesale sales. BDI contends that within the plain meaning of the statute, the closing language following the three-part antecedent list modifies solely the term, "conversion."  BDI thereby asserts that the materials it sells that customers subsequently incorporate into machinery for manufacturing should be considered wholesale sales because they need not be component parts of the finished products.  According to BDI's reading, the definition as it applies to manufacturing would simply state:  "'Wholesale sale' or 'sale at wholesale' includes the sale of industrial materials for future manufacture."  We agree with the parties that the definition is not ambiguous.  However, we cannot agree with BDI's interpretation.

In support of its argument, BDI relies on a canon of statutory construction known as the "rule of the last antecedent."  *See In re Estate of Tanner*, 295 S.W.3d at 624 ("It is a general maxim of statutory interpretation that under "the 'rule of the last antecedent,' . . . 'a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows.'" (quoting *United States v. Hayes,* 555 U.S. 415, 425 (2009))).  In response, Commissioner relies on what Antonin Scalia and Bryan A. Garner have termed the "Series-Qualifier Canon" of statutory construction.  *See* READING LAW: THE INTERPRETATION OF LEGAL TEXTS 147 (Thomson/West 2012) ("When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series.").  The position of the modifier in relation to what it modifies determines whether the modifier is prepositive ("pre-positioned," i.e., positioned before) or postpositive ("positioned after"). *Id.* at 147-48.

- 11 -

In considering an appellant's argument based in part on the rule of the last antecedent, the United States Supreme Court noted that the "grammatical rule" is "'not an absolute and can assuredly be overcome by other indicia of meaning.'" *Paroline v. United States*, 572 U.S. 434, 447 (2014) (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)). The High Court also noted that in the past, it "ha[d] not applied [the rule] in a mechanical way where it would require accepting 'unlikely premises,'" *Paroline*, 572 U.S. at 447 (quoting *United States v. Hayes,* 555 U.S. 415, 425 (2009)). Determining that "[o]ther canons of statutory construction" "work[ed] against the reading the [appellant] suggest[ed]," the Court invoked the following: "'When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.'" *Paroline*, 572 U.S. at 447 (quoting *Porto Rico Ry., Light & Power Co. v. Mor,* 253 U.S. 345, 348 (1920)). BDI asserts that what Commissioner has referred to as the "Series-Qualifier Canon" has never been applied in Tennessee courts. We note, however, that the underlying principle, if not the term, "Series-Qualifier Canon," is a longstanding canon of statutory construction, as noted in *Paroline*, and has been utilized by Tennessee appellate courts. *Id.*; *see, e.g.*, *Rust v. Griggs*, 113 S.W.2d 733, 736 (Tenn. 1938) (quoting with approval *Porto Rico Ry., Light & Power Co. v. Mor,* 253 U.S. 345, 348 (1920)).[5]

As suggested in *Paroline*, *see* 572 U.S. at 447, we find it helpful in analyzing the plain meaning of the statutory language in this instance to examine the "natural construction" of the sentence at issue:

> "Wholesale sale" or "sale at wholesale" includes the sale of industrial materials for future processing, manufacture or conversion into articles of tangible personal property for resale where the industrial materials become a component part of the finished product.

Tenn. Code Ann. § 67-4-702(a)(24). The subject of the sentence is the term being defined ("wholesale sale" or "sale at wholesale"), and the main verb of the sentence is "includes." The object of the main verb (what is included) is the rest of the sentence.

---

[5] BDI attempts to distinguish the statutory analysis in *Paroline* from the analysis in this action because the *Paroline* Court also applied a "familiar canon of statutory construction that [catchall] clauses are to be read as bringing within a statute categories similar in type to those specifically enumerated" and because no catchall clause appears in the wholesale definition at issue here. *See Paroline*, 572 U.S. at 447 (quoting *Fed. Maritime Comm'n v. Seatrain Lines, Inc.,* 411 U.S. 726, 734 (1973)). However, the *Paroline* Court's application of the catchall-clause canon was in conjunction with its application of the series-qualifier canon without any interdependence noted between the two. *See Paroline*, 572 U.S. at 447. We determine the distinction noted by BDI to be one that does not impact the application of the series-qualifier canon of statutory construction in this case.

This overall object begins with "the sale," followed by a preposition, "of" and the object of that preposition, a phrase comprised of the adjective, "industrial," and the noun, "materials." *See* CHERYL GLENN & LORETTA GRAY, HODGES' HARBRACE HANDBOOK 34 (16th ed. 2007) ("A prepositional phrase consists of a preposition (a word such as *around*, *at*, or *near* [*for*, *of*, and *into* are also subsequently listed]) and a noun, phrase, or pronoun (object of the preposition)."). The overall object (again, what is included) then continues with another preposition, "for," and a series of objects of that preposition preceded by an adjective, "future." The series of objects is the series at issue here, joined by the coordinating conjunction, "or": "processing, manufacture or conversion."

BDI argues in part that the three words in the object series noted above cannot all be modified by the closing language because they are not in parallel construction, asserting that all are not the same part of speech because "manufacture" is a verb while "processing" and "conversion" are nouns.[6] BDI does not address the function of the three words as a three-part object of the preposition, "for." Objects of prepositions generally function as nouns. *See id.* Commissioner essentially responds that "manufacture" is often used as a noun in this context. We agree with Commissioner on this point. Moreover, "manufacture" is defined as often functioning as a noun in common usage. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 709 (defining "manufacture" in its functions as both a noun and a verb); *see, e.g.*, *Bradley Cty. Sch. Sys. v. City of Cleveland*, 575 S.W.3d 515, 516 (Tenn. 2019) (noting the history of a statute that "criminalized the sale, purchase, receipt, possession, transport, and manufacture of alcoholic beverages") (emphasis added). Additionally, BDI does not address the function of "future" as a prepositive modifier of the entire object series it precedes so that any "processing, manufacture or conversion" would be in the future in relation to the sale.

Examining the structure of the remainder of the sentence following the three-word series, we find three prepositional phrases — (1) "into articles" / (2) "of tangible personal property" / (3) "for resale" — followed by an adverbial clause that begins with the subordinating conjunction, "where." The function of such an adverbial clause is explained in HARBRACE as follows:

> An adverbial clause usually answers a question about a verb: Where? When? How? Why? In what manner? Adverbial clauses are introduced by subordinating conjunctions such as *because*, *although*, and *when* [*where* is subsequently listed].

GLENN & GRAY, at 41.

---

[6] We note that as used in the sentence at issue, "processing" is actually a gerund, an "ing" form of the verb functioning as a noun. *See* GLENN & GRAY, at 29.

- 13 -

In this instance, we determine that the adverbial clause, "where the industrial materials become a component part of the finished product," is answering a question about the main verb, "includes," in other words, what condition must be met in order for "the sale of industrial materials for future processing, manufacture or conversion into articles of tangible personal property for resale" to be considered a wholesale sale or sale at wholesale. Although not stated exactly as such, BDI would have us hold that the adverbial clause is answering a question about how industrial materials are converted with no reference to how they are processed or manufactured. Under BDI's reading, the three prepositional phrases between the object list at issue and the adverbial clause would also solely apply to "conversion," meaning that the definition would purportedly mean that to qualify as wholesale sales, industrial materials would not need to be processed or manufactured "into articles of tangible personal property <u>for resale.</u>" Instead this requirement would apply only to conversion.

We find BDI's interpretation to be antithetical to the general definition provided in Tennessee Code Annotated § 67-4-702(a)(24)(A) that a wholesale sale "means any sale to a retailer <u>for resale</u>" (emphasis added). *See Sec. Equip. Supply*, 520 S.W.3d at 21 ("[I]n most circumstances the key factor for distinguishing between retail sales and wholesale sales is whether or not the sales are 'sales for resale.'"). Moreover, as Commissioner notes, in the sentence at issue, BDI fails to fully take into account the link between the "sale of industrial materials" in the first clause of the sentence and the repetition of "industrial materials" in the closing adverbial clause, which we find functions to link back and qualify the earlier use of the term by explaining when those industrial materials may become wholesale sales. We determine that in this instance, the natural construction of the language demands that the closing language at issue be read to apply to the entire three-part object series: processing, manufacture, and conversion.[7]

BDI takes issue with the trial court's reliance on this Court's decision in *Sec. Equip. Supply*, 520 S.W.3d 18. The trial court specifically found in this regard:

---

[7] BDI also posits that because the General Assembly did not include a comma between "conversion" and the remainder of the sentence, the rule of the last antecedent should apply. *See State ex rel. McQueen v. Metro. Nashville Bd. of Pub. Educ.*, 587 S.W.3d 397, 405-06 (Tenn. Ct. App. 2019) ("Applying the last antecedent rule to the phrase at issue in this case—*approved to operate one (1) or more schools in the district*—we conclude that the legislature intended for the phrase to modify only "a public charter school" because there is no comma before the phrase.") (citing 2A NORMAN J. SINGER & SHAMBIE SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47.33 (7th ed. 2018 update), for the proposition that "[a] qualifying phrase separated from antecedents by a comma is evidence that the qualifier is supposed to apply to all the antecedents instead of only to the immediately preceding one")). Having concluded that BDI's analysis of the sentence at issue fails to take into account several intervening phrases in the sentence's construction and having noted "other indicia of meaning," *see In re Estate of Tanner*, 295 S.W.3d at 624 (quoting *United States v. Hayes,* 555 U.S. 415, 425 (2009)), we determine BDI's comma argument to be unavailing.

In *Security Equipment Supply, Inc. v. Roberts*, 520 S.W.3d 18 (Tenn. Ct. App. 2016), the seller of security-related electronic equipment brought an action for judicial review of the Department's determination that the seller classified its sales to customers as wholesale sales when they should have been classified as retail sales, as well as the Department's assessment of business tax liability against the seller based on such determination. Under the Court's reading, "processing" was limited by the requirement that the material be incorporated into a finished product as a component part. *See id.* at 22-23; Tenn. Code Ann. § 67-4-702; Tenn. Comp. R. & Regs. 1320-04-05-.47 (current through Sept. 26, 2016). Accordingly, the Court of Appeals determined that, because the seller's customers did not process the equipment further, the seller's "sales constitute 'retail sales' and are taxable at the retail rate under the Business Tax Act." *Id.* at 23.

As the Court in *Security Equipment Supply* determined that "processing" was limited by the requirement that the material be incorporated into a finished product as a component part, it likewise follows that all three activities listed in Tenn. Code Ann. § 67-4-702(a)[(24)](B) – processing, manufacture and conversion – are modified by the phrase "into articles of tangible personal property for resale where the industrial materials become a component part of the finished product." *Id.*; *Security Equip. Supply*, 520 S.W.3d at 22-23. This interpretation ascertains and gives effect to the intention of the Legislature that "component part" means a component part of the manufactured product, not a component part of manufacturing equipment.

(Footnote omitted.) BDI asserts that the trial court's interpretation of *Sec. Equip. Supply* was in error because the *Sec. Equip. Supply* Court merely quoted the text of the wholesale definition, as set forth in Rule 47, but "did not find or otherwise rule on the issue of whether the terms 'processing' or 'manufacture' were limited by the requirement that industrial materials become a component part of a finished product." We agree with BDI up to a point.

In *Sec. Equip. Supply*, the appellant argued that "its sales fit within subsection 1 of Rule 47 and should be considered wholesale sales because it sells equipment to dealers who further process the equipment as a component part of the comprehensive product they sell to the end user." *Sec. Equip. Supply*, 520 S.W.3d at 22. Subsection (1) of Rule 47 provides:

> Sales for resale include those whereby a supplier of materials, supplies, equipment and services makes such tangible personal property or services available for further processing as a component part of a product to legitimate dealers engaged in and actually reselling or leasing such property to a user or consumer. <u>Sales to a manufacturer or processor for future processing, manufacture or conversion into articles of tangible personal property for resale where such industrial materials become a component part of the finished product are likewise considered sales for resale.</u>

Tenn. Comp. R. & Regs. 1320-04-05-.47(1) (emphasis added). This Court affirmed the trial court's finding in *Sec. Equip. Supply* that instead of falling within subsection 1 of Rule 47, the sales of the appellant, a contractor, fell within subsection 5, which provides that "[s]ales to a contractor who in the course of performing his contract installs property or uses services in a structure, as a component part thereof, are retail sales to a user or consumer." *See* Tenn. Comp. R. & Regs. 1320-04-05-.47(5). The issue in *Sec. Equip. Supply* was not, therefore, as it is here, whether a product purchased for processing had to become a component part of a finished product for resale in order to be considered a wholesale purchase.

However, the *Sec. Equip. Supply* Court did address the appellant's issue as one of whether because its products were processed into "component parts" of finished products, they should be considered wholesale sales under subsection (1) of Rule 47 or instead fall within subsection (5), which this Court described as a subsection under which "certain sales which may appear to be wholesale sales" are "classified as 'retail sales' for taxation purposes." *Sec. Equip. Supply*, 520 S.W.3d at 22 (citing Tenn. Comp. R. & Regs. 1320-04-05.47). In addressing the issue, this Court identified no discrepancy in the portion of the appellant's argument positing what the trial court here described as the tenet that "'processing' was limited by the requirement that the material be incorporated into a finished product as a component part." Therefore, although the trial court somewhat overstated the holding in *Sec. Equip. Supply*, we find this overstatement to be harmless error and also determine that the trial court's conclusion is not contraindicated by this Court's decision in *Sec. Equip. Supply*.

In the instant action, the trial court continued its findings concerning the statutory definition as follows:

> This conclusion is further demonstrated by the Tennessee Supreme Court's interpretation of a nearly identical phrase in the Retailers' Sales Tax Act:

- 16 -

(E)    "Sale at retail," "use," "storage," and "consumption" do not include the sale, use, storage or consumption of:

    (i)    Industrial materials and explosives for future processing, manufacture or conversion into articles of tangible personal property [for] resale where such industrial materials and explosives become a component part of the finished product or are used directly in fabricating, dislodging, sizing, converting or processing such materials or parts thereof[.]

[quoting what was then Tenn. Code Ann. § 67-6-102(13)(E)]. Interpreting this statute, the Tennessee Supreme Court held that "[i]n order to qualify for the component part exemption, the materials must have gone into the finished product as an ingredient or component, either chemically or mechanically." *Sears Roebuck & Co. v. Woods*, 708 S.W.2d 374, 381 (Tenn. 1986).

We agree with the trial court's interpretation of our Supreme Court's decision in *Sears Roebuck & Co. v. Woods*, 708 S.W.2d 374, 381 (Tenn. 1986), as it applies to the instant action. Similarly, Commissioner relies in part on several Tennessee Supreme Court decisions in accord with the *Sears* Court's interpretation of what it termed the "component part exemption," *see id.*, under the above-quoted language in the Retailers' Sales Tax Act. *See Jersey Miniere Zinc Co. v. Jackson*, 774 S.W.2d 928, 930 (Tenn. 1989); *Quaker Oats v. Jackson*, 745 S.W.2d 269, 271 (Tenn. 1988); *Kingsport Publ'g Corp. v. Olsen*, 667 S.W.2d 745, 746 (Tenn. 1984).

In an earlier decision, *Phillips & Buttorff Mfg. Co. v. Carson*, 217 S.W.2d 1, 2 (Tenn. 1949), our Supreme Court examined the validity of Rule 47 in applying the version then in effect of the Retailers' Sales Tax Act. The Court held in part that materials used in the processing or manufacture of products for resale (including examples of coal, fuel oil, machinery, tools, maintenance materials, and building materials) did not fall under the exemption "because they do not become a part of the article being made for resale"). *Phillips*, 217 S.W.2d at 142-44. In reversing the trial court's finding in favor of the taxpayer on this issue, our High Court stated:

We think the basic error of the chancellor's finding appears in giving the statute a liberal construction in favor of the taxpayer instead of a strict construction against him. It is a uniform rule of construction of tax statutes,

from which we have not departed, that exemptions in tax statutes are strictly construed against the taxpayer.

*Phillips*, 217 S.W.2d at 139. BDI argues that *Phillips*, *Sears*, and their progeny are distinguishable because those decisions involved interpretation of a tax exemption provision with the same language at issue here rather than a taxing statute. BDI thereby asserts that because the Business Tax Act is a taxing statute, this Court should, by applying a liberal construction in favor of the taxpayer, interpret the statutory wholesale definition in the way BDI has read it. We disagree.

Our Supreme Court has observed that although "the most frequently cited canon of construction of tax statutes" is that "laws imposing taxes must be construed strongly against the taxing authority," "[o]ften an elaboration is added to this basic canon of construction that if there are doubts or ambiguities contained in the statute, they must be resolved in favor of the taxpayer." *Crown Enters., Inc. v. Woods*, 557 S.W.2d 491, 493 (Tenn. 1977). In other words, we would first discern a doubt or ambiguity concerning the plain meaning of a tax statute before endeavoring to construe it against the taxing authority. In this instance, we discern no such doubt or ambiguity.[8] Furthermore, given that the language of the exemption under the Retailers' Sales Tax Act set forth in *Sears* is essentially identical to the language of the wholesale sales definition at issue here, we determine that the trial court did not err in finding that the holding in *Sears* provided controlling authority in interpreting the language at issue within the Business Tax Act. *See Sears*, 708 S.W.2d at 381 ("[I]n order to qualify for the component part exemption, the materials must have actually gone into the finished product as an ingredient or component, either chemically or mechanically." (citing *Kingsport Publ'g*, 667 S.W.2d at 746)). Likewise, we discern no error in the trial court's reference in its final order to interpreting the identical language of the two tax statutes *in pari materia*. *See Art Pancake's United Rent-All v. Ferguson*, 601 S.W.2d 926, 930 (Tenn. Ct. App. 1979) ("Tennessee Courts have repeatedly stated that consistent interpretations of related statutes are required in accordance with the *in pari materia* principle of statutory construction.").

Considering the natural construction of the wholesale definition in Tennessee Code Annotated § 67-4-702(a)(24)(A)-(B), together with Tennessee precedent interpreting the language of the definition, we determine that the trial court did not err in finding, as a matter of law, that

---

[8] Citing dictionary definitions, BDI further argues that pursuant to the commonly understood meanings of terms undefined in the Business Tax Act, specifically "industrial," "materials," and "manufacture," sales of goods utilized by BDI's customers in the manufacturing process would constitute "industrial materials" and should therefore be considered wholesale sales. Upon review, we determine that the dictionary definitions cited by BDI do not affect our analysis of the plain language of the statute.

all three activities – processing, manufacture and conversion – are modified by the phrase 'into articles of tangible personal property for resale where the industrial materials become a component part of the finished product[,]' such that "component part" means a component part of the manufactured product, not a component part of manufacturing equipment.

BDI is not entitled to relief on this issue.

## V.  BDI's Burden to Establish Wholesaler Status

BDI also contends that the trial court erred by finding that Tennessee Code Annotated § 67-4-702(a)(24) and (25) did not place an "unconstitutionally impossible burden" upon BDI to establish wholesaler status.  BDI specifically argues that the statute requires it to track the ultimate use of each product sold to its manufacturing customers and that, given the millions of products in its inventory catalog, the mixed uses for which customers may purchase BDI's products, and BDI's lack of access to its customers' third-party records, it is impossible for BDI to meet this requirement.  The trial court in its final order determined that the statutory definition of wholesaler did not violate BDI's rights "under the equal protection and due process clauses of the United States Constitution." Commissioner contends that the trial court did not err in so finding because if BDI were entitled to be considered a wholesaler, it would be able to meet its statutory burden of establishing more than fifty percent of its taxable gross sales as wholesale by presenting already available documentation on a customer-by-customer basis.  Upon thorough review of the record and applicable authorities, we conclude that the statute does not place an impossible burden upon BDI.

In its complaint, BDI alleged that the statutory definition of wholesaler under the Business Tax Act, as interpreted by Commissioner, violates "principles of Equal Protection under the Tennessee Constitution and the United States Constitution."  In its memorandum in support of its motion for summary judgment, BDI posited that sellers are treated differently under Commissioner's implementation of the Business Tax Act as opposed to Commissioner's implementation of the Tennessee Retailers' Sales Tax Act, codified at Tennessee Code Annotated §§ 67-6-101 – 67-6-907 (2018 & 2021 Supp.) ("Sales Tax Act"), because under the Sales Tax Act, sellers can obtain certificates from purchasers to verify sales for resale or exempt sales, with liability then placed upon the purchasers, rather than the sellers, if the purchasers subsequently fail to qualify for an exemption.  *See* Tenn. Comp. R. & Regs. 1320-05-01-.78.  On appeal, the constitutional basis for BDI's argument is somewhat vague.  However, relying on a 1940 federal district court decision applying Tennessee law, *Buck v. Harton*, 33 F. Supp. 1014 (M.D. Tenn. 1940), in which the district court found that it was impossible for the complainants to

comply with a Tennessee statute involving copyright law and further found that the statute "denie[d] to complainants equal protection of the laws, and denie[d] to the complainants due process of law," *see Buck*, 33 F. Supp. at 1021, BDI posits that this Court should reach the same conclusion regarding the definitions of wholesale sales and wholesaler under the Business Tax Act.

As to BDI's reliance on *Buck*, we first note that although a federal district court decision may be persuasive authority, it is not controlling for this Court. *See Summers Hardware & Supply Co. v. Steele*, 794 S.W.2d 358, 362 (Tenn. Ct. App. 1990) ("Cases from other jurisdictions, including federal cases, are always instructive, sometimes persuasive, but never controlling in our decisions."). Moreover, we find *Buck* to be highly factually distinguishable from the instant action. In *Buck*, an association of composers, artists, and publishers challenged the constitutionality of a statute regulating the pooling of copyright privileges within Tennessee. *Buck*, 33 F. Supp. at 1018. The district court found that the statute made "it impossible for complainants to issue licenses in the State of Tennessee for the public performance for profit of their copyrighted musical compositions, except at the risk of incurring prohibitive civil and criminal penalties of said Statute, and the confiscation of their copyrights." *Id.* at 1020. Among the reasons for this impossibility found by the district court were that compliance with the statute would have required the nullification of copyrights granted under federal law, the severance or at least endangerment of established contracts, the violation of treaties involving reciprocal copyrights between foreign countries and the United States, and the loss of any judicial remedy for infringement through unlawful public performances of copyrighted musical compositions. *Id.* at 1020-21. We do not find the statutory burden placed on BDI to establish itself as a wholesaler to be anything comparable to the burden the statute at issue in *Buck* placed on the complainants in that case.

BDI also relies in part on an Ohio state appellate decision, *Gigliotti v. New York, Chicago & St. Louis R. Co.*, 157 N.E.2d 447 (Ohio Ct. App.), and a Florida state appellate decision, *Ivaran Lines, Inc. v. Waicman*, 461 So.2d 123 (Fla. Dist. Ct. App. 1984), both of which may likewise be persuasive authority but are not controlling for this Court. *See Summers Hardware*, 794 S.W.2d at 362. In *Gigliotti*, the Ohio Court found that under the specific factual circumstances of the train-vehicle accident at issue, it was impossible for the engineer to blow the train's whistle at the distance required by statute, rendering the statute "inoperative" in that instance. *Gigliotti*, 157 N.E.2d at 452 ("If a statute apparently requires the performance of something which cannot be performed, a court may hold it inoperative."). The Florida Court adopted the *Gigliotti* holding in relation to a negligence *per se* claim, again solely as to the circumstances in that case. *See Ivaran Lines*, 461 So.2d at 125; *cf. Nat'l Shooting Sports Found., Inc. v. California*, 420 P.3d 870, 874 (Cal. 2018) ("The court in *Gigliotti* was simply stating . . . that impossibility of compliance can render a statutory mandate 'inoperative' in a particular

instance insofar as it is apparent that 'the Legislature did not intend to include' that instance within the ambit of the statutory mandate." (quoting *Gigliotti*, 157 N.E.2d at 452)). We discern no circumstances in the instant action that would render the statutory definition of wholesaler inoperative due to impossibility.

In declining to find that the statutory definition of wholesaler would be impossible for BDI as a taxpayer to satisfy, the trial court particularly noted Mr. Robertson's deposition testimony and stated in its final order in pertinent part:

> A seller qualifies as a wholesaler pursuant to Tenn. Code Ann. § 67-4-702(a)[(25)] if more than 50% of the items it sells become component parts of manufactured products. BDI argues that the wholesaler definition in Tenn. Code Ann. § 67-4-702(a)[(25)], as applied to BDI, places an undue and impossible burden upon it. More specifically, BDI asserts that it has millions of stock keeping unit ("SKU") codes in its inventory catalog, each of which represents a single product sold by BDI. Based upon the number of SKU codes, BDI estimates that it would have to obtain and analyze customer use information for each of multiple millions of products sold to its manufacturing customers in order to determine whether BDI's sales meet the more than 50% wholesale threshold in order to qualify as a wholesaler under Tenn. Code Ann. § 67-4-702(a)[(25)][(2013)].

> BDI does not have access to its customers' records regarding how its customers use items purchased from BDI, if such detailed records even exist. Thus, based on the number of items BDI sells, as well as BDI's lack of access to third-party information regarding customer use of goods purchased from it, BDI asserts that it is impossible for it to obtain and analyze the necessary information to determine the amount of wholesale sales so as to satisfy the more than 50% threshold to qualify as a wholesaler.

> As further proof of this alleged impossibility, BDI points to the auditor's assessment and argues:

>> [I]nstead of analyzing BDI's sales on an individual basis, [the Department] makes retail and wholesale classifications on a customer by customer basis relying wholly on sales and use tax exemption certification provided by customers. In so doing, [the Department] disregards any instance where a single purchaser might make purchases that could potentially be classified as both wholesale and retail, and instead

classifies all purchased products by such customer as either entirely wholesale or entirely retail[.]

BDI argues that its customers undisputedly make mixed purchases.

Larry Wayne Robertson, Tax Auditor Supervisor for the Department, testified in his deposition as follows:

[BDI's Counsel]: What must a taxpayer like BDI do in order to accomplish this calculation of the proper percentage of retail or wholesale noted by the auditor in the audit work papers?

[Mr. Robertson]: The taxpayer should use a method that can distinguish their customers between whether they are retail or wholesale. The way to do that is, can be accomplished by either looking strictly at the exemption form that each customer has provided, ranking sales by customer is another way, and using highest to lowest in sales, and then looking to see what each of those customers have provided in the way of exemption forms. That would be generally the way it would be done. The taxpayer, what the taxpayer would be expected to do.

[BDI's Counsel]: Now earlier, you referenced the definitions for wholesale sale and retail sale under business tax statutes and you also noted if there is a 50% threshold–

[Mr. Robertson]: Right.

[BDI's Counsel]: —to be classified one way or the other. In determining percentages to see if a taxpayer or BDI is over that threshold to be a wholesaler, do you look at a per sale basis?

[Mr. Robertson]: A per sale, no. You would look at total sales for the customer. So the percentage of sales to that particular customer to your total sales for that year, total taxable sales for that year would determine the percentage.

[BDI's Counsel]: Make sure I'm clear.

[Mr. Robertson]: Okay.

[BDI's Counsel]: So are you saying that you look at the total sales and you determine the percentage of total sales which are wholesale versus all sales, is that how the percentage is done?

[Mr. Robertson]: Correct, right. You want to calculate whether you have a 50% of either one. If you have more than 50% wholesale sales, then you would use the wholesale rate for all of your sales; vice versa, if you have 50% retail sales, then all of your sales would be retail, set at the retail rate.

[BDI's Counsel]: So in determining this percentage, you have to, does the taxpayer have to classify each sale as either retail or wholesale that it makes over that period?

[Mr. Robertson]: Not each sale.

[BDI's Counsel]: Not each sale?

[Mr. Robertson]: No.

[BDI's Counsel]: How do they do the percentage then? Maybe I'm not clear. I'm sorry.

[Mr. Robertson]: I guess what you're asking is, each specific sale is based on customer. It's not based, if you have 100 sales to a customer, then all, the total of all of those sales based on what customer had provided as far as exemption form, what they're doing with what you purchased. You don't have to look at each individual sale.

* * *

[BDI's Counsel]: And can a customer not make both retail and wholesale purchases?

[Mr. Robertson]: A customer could make retail and wholesale purchases, yes. But for the taxpayer, they're only getting one exemption form.

[BDI's Counsel]: How are those sales broken up?

[Mr. Robertson]: What do you mean?

[BDI's Counsel]: How would you divide those sales for determining percentages?

[Mr. Robertson]: You don't, it's not your responsibility. It's not the taxpayers' responsibility to divide those sales. The customer who has provided the certificate is the one that's responsible for keeping track of whether they use it or whether they resell it. If they give the taxpayer, your client [BDI], an exemption form that says I am going to resell what I purchased from you, then the taxpayer can consider those sales to be for resell.

As the testimony of the Department's corporate representative demonstrates, it would not be impossible for BDI to gather the information

- 24 -

necessary to demonstrate that it meets the more than 50% wholesaler threshold. It is not necessary for a taxpayer, like BDI, to make the wholesale v. retail determination on a sale-by-sale basis. Instead, a taxpayer, like BDI, can support its claim of greater than 50% wholesale sales with a variety of already-available documents and that taxpayer can proceed on a customer-by-customer, rather than item-by-item, basis.

With respect to the audit, the auditor based her conclusion on the documentation available to her, which consisted of the various exemption certificates the Department used in its sales tax audit of BDI. The auditor reviewed BDI's sales on a customer-by-customer basis. A customer that presented to BDI a resale or an exempt-entity (i.e., charitable, governmental, or educational) certificate for a sales tax exemption qualified as a wholesale customer for business tax purposes and was treated as one by the auditor. A customer that presented to BDI an industrial machinery exemption certificate for sales tax purposes was treated as a retail customer.

If the auditor treated a BDI customer as a wholesale customer based on its exemption certificate, 100% of that customer's purchases from BDI were treated as wholesale sales. Accordingly, it was not necessary for the auditor to look at each individual sale, and it also would not have been necessary for BDI to do so. The exemption form was sufficient for each customer.

The possibility of mixed sales does not make the Department's method impossible for BDI to use to demonstrate that it meets the more than 50% wholesaler threshold. Because a manufacturer can also be a reseller, the manufacturer could present BDI with either an industrial machinery certificate or a resale certificate in order to purchase items from BDI free of sales tax. The manufacturer's use of an industrial machinery certificate indicates that the manufacturer uses BDI's products in the manufacturing process and does not incorporate them into its products as component parts. If that same manufacturer is incorporating BDI's products into its own products, then BDI needs only to obtain a resale certificate from the manufacturer to establish a wholesale sale. BDI does not need to investigate and determine the ultimate disposition of each product.

The auditor did not make an unsuccessful attempt to examine each individual sale, as BDI asserts. Rather, the auditor was merely unable to conclude that 100% of BDI's sales were wholesale sales. The fact that a

customer has a large number of purchases actually works in BDI's favor, as that customer's purchases can be aggregated without further inquiry and counted toward the more than 50% wholesaler threshold. The Department's approach gives a taxpayer, even one like BDI with many separately-sold items, ways to simplify its proof and generously allows the taxpayer to clear the more than 50% wholesaler threshold.

For the foregoing reasons, the Court finds that [the statutory definition] does not impose an impossible burden on BDI and, as such, does not violate BDI's rights under the equal protection and due process clauses of the United States Constitution.

(Internal citations to record omitted.) Upon careful review, we agree with the trial court.

The gravamen of BDI's argument concerning the alleged impossibility of its burden is that the statute requires that every sale be counted as either retail or wholesale for business tax purposes. Commissioner acknowledges that BDI cannot trace the ultimate use of every sale. Therefore, BDI contends that compliance with the statutory definition of wholesaler is impossible. The flaw in BDI's argument is in its interpretation that the statute requires documentation of the ultimate use of every product sold and every sale of that product. Tennessee Code Annotated § 67-4-702(a)(25) provides that a person is "primarily engaged in the business of wholesale sales" when "more than fifty percent (50%) of the taxable gross sales of the business are wholesale sales." BDI posits that because § 67-4-702(a)(25) states, "taxable gross sales," and § 67-4-702(a)(24)(A) defines wholesale sales generally as "any sale to a retailer for resale," the customer-by-customer method utilized by Commissioner violates the requirements of the statute because it does not account for the ultimate disposition of every sale. We disagree.

As the trial court noted, to qualify as a wholesaler under the statutory definition, BDI needed only to establish that more than fifty percent of its taxable gross sales for the Audit Period were wholesale sales, meaning that, provided its documentation was sound, BDI could have produced documentation of wholesale sales for fifty-one percent of its total gross sales, stopped there, and still have been considered a wholesaler under the statutory definition. BDI need not have documented the ultimate disposition of every single sale. BDI argues that Commissioner's method of using exemption certificates that BDI's customers had presented in compliance with the Sales Tax Act was an unacceptable "workaround." However, rather than a "workaround," we determine this procedure to have been simply a method of applying the statutory definition of wholesaler.

We emphasize that "in most circumstances the key factor for distinguishing between retail sales and wholesale sales is whether or not the sales are 'sales for resale.'" *See Sec. Equip. Supply*, 520 S.W.3d at 21. When questioned regarding the exemption forms utilized by the auditor to classify BDI's customers as making primarily either retail purchases from BDI or wholesale purchases (for resale, or as determined in the preceding section of this Opinion, as component parts of products for resale), Mr. Robertson testified that the Sales Tax Act "requires exemption forms," acknowledging that no such requirement exists in the Business Tax Act. According to Mr. Robertson, the exemption forms provided by BDI's customers under the Sales Tax Act indicated whether their purchases were exempt for purposes of the sales and use tax because they were for resale. Mr. Robertson further testified that in the absence of sufficient documentation presented by BDI of its claimed wholesaler status, the auditor utilized BDI's customers' exemption forms to determine whether the majority of products purchased from BDI were then resold (wholesale) or were retail.

As Mr. Robertson explained, the audit was conducted on a customer-by-customer basis, meaning that if one of BDI's customers had provided an exemption certificate to BDI establishing its purchases as for resale, Commissioner then would have considered all of BDI's sales to that customer as wholesale. Although BDI disputes the accuracy of its customers' exemption forms, or "resale certificates," particularly whether they accounted for customers who purchased both retail and wholesale products, BDI does not dispute that it had access to the exemption forms, which according to Mr. Robertson's testimony, would generally have been presented to BDI by its customers at the time of purchase.

During his deposition testimony, Mr. Robertson further explained:

Commissioner's Counsel: So just to clarify, what effect would a resale certificate have for sales tax purposes?

Mr. Robertson: For sales tax purposes, it's a deduction, it's an exempt sale, so it's a deduction on Schedule A from taxable sales.

Commissioner's Counsel: And what assumption would that lead to for business tax purposes?

Mr. Robertson: For business tax purposes, it would, for a resale certificate, it would be assumed it would be a wholesale sale.

Commissioner's Counsel: Okay. And would that apply for all of the sales of the customer that presented to BDI a resale certificate?

Mr. Robertson: Yes.

Commissioner's Counsel: Does a resale certificate usually allow the recipient of it to tell what's going to happen to the item it sells to the provider?

Mr. Robertson: Yes. If it has, if the customer has marked it, yes.

Commissioner's Counsel: You say if the company customer has marked it?

Mr. Robertson: Yes. It would not be a valid certificate if it's not marked. But the customer has to choose what they are planning to do with it.

Commissioner's Counsel: Do with the product bought by the customer?

Mr. Robertson: Correct.

Commissioner's Counsel: Now what about industrial machinery exemption certificate, what effect does that have for sales tax purposes?

Mr. Robertson: Sales tax purposes, it is an exemption certificate that allows that taxpayer to hold that certificate to purchase industrial machinery and associated parts exempt from sales and use tax.

Commissioner's Counsel: What assumption would that lead to for business tax purposes?

Mr. Robertson: For business tax, it would be assumed that this has to be a part that's used by the taxpayer or used by the customer in their processing and is not resold and so therefore it would be a retail sale for business tax.

Commissioner's Counsel: Did the Department also rely on direct pay certificates for BDI?

Mr. Robertson: Yes.

Commissioner's Counsel: And what is a direct pay certificate?

Mr. Robertson: Direct pay certificate is an authorization approved by the Commissioner to allow certain taxpayers who make the request for this authorization to purchase all, everything that they purchase tax exempt and self-accrued for any items that they use themselves versus items that they resell. And if it's received for sales and use tax purposes, it would be treated as an authorized exempt sale by the taxpayer.

Commissioner's Counsel: Did the Department also rely on exemption documentation for government education or charitable entities?

Mr. Robertson: Yes.

Commissioner's Counsel: And what if BDI received an exemption certificate of that type, what would be the effect for business tax purposes?

Mr. Robertson: For business tax purposes, that would be treated as a wholesale sale according to the definition.

Commissioner's Counsel: Would that be all sales to that customer?

Mr. Robertson: Yes.

Commissioner's Counsel: For the two types, two types, direct pay certificate and an industrial machinery exemption certificate, I understand that the assumption for business tax purposes would be that all the sales to that customer were retail; is that correct?

Mr. Robertson:           That's correct.

Commissioner's Counsel:   Could BDI have presented other information to the Department to show that at least some of the sales to those customers should be considered wholesale?

Mr. Robertson:           For industrial machinery certificate, I don't think they could provide anything else. For direct pay certificate, they could provide Affidavits or something from their customer to show what percentage of the purchases from BDI were used by them versus resold by them.

Commissioner's Counsel:   Would such an Affidavit have to go on a sale-by-sale basis?

Mr. Robertson:           No.

Commissioner's Counsel:   Could it state a percentage of sales?

Mr. Robertson:           Yes.

Commissioner's Counsel:   In providing information to the auditor as part of this audit process for the business tax, was it necessary for BDI to follow each item that it sold to determine whether it became a component part of the finished product?

Mr. Robertson:           No, no.

Commissioner's Counsel:   Did the auditor attempt to examine each invoice or sale to determine if the item became a component part of the finished product?

Mr. Robertson:           No.

Commissioner's Counsel:   Should the auditor have done that?

Mr. Robertson:           No, no, not practical.

Commissioner's Counsel: Could BDI have used a method that did not require it to chase down every item it sold and see how the purchasers used them?

Mr. Robertson: Yes. I think relying on the exemption certificates first and then I would also have recommended that they ranked their sales dollar-wise highest volume to lowest, and then because in that method, allows you to not have to look at much, as quite as much. Because if you get your top 10 customers and you've already exceeded based on the exemption that they provided 50% wholesale, then you do not need to look any further.

Commissioner's Counsel: So is the way you're looking at it, the company, BDI's position is just aiming to get over the 50% threshold and could go just take the most obvious customers, the most promising customers, add those up until it hits 50% and then that would satisfy?

Mr. Robertson: That would be the way I would, that I would recommend, yes.

As Mr. Robertson's testimony indicated, Commissioner acknowledges that the method utilized in its audit did not (and could not) capture the disposition of every single item purchased by customers from BDI. However, we agree with the trial court that it was not necessary for Commissioner to do so in order to determine whether BDI qualified as a wholesaler according to the statutory definition during the Audit Period. BDI further argues that surveys it sent to customers after the Audit Period demonstrated that many customers purchased "mixed sales," meaning that they incorporated some products into finished products for resale and not others, particularly products that became part of the customers' manufacturing processes. BDI presented completed responses from eight customers, attached to its "Statement of Additional Material Facts" and submitted as exhibits to Mr. Robertson's deposition. It is undisputed that within the audit, Commissioner classified all eight of these customers as retail customers. However, each customer responded in the affirmative to BDI's question: "Do you use any of the Products on the attached Product Line Card as a component part in the Product that you manufacture or process?"

In reviewing the eight customer surveys during his deposition, Mr. Robertson testified that the responses to this question were in several cases at odds with other responses provided by the same customers. For instance, one customer, Jimmy Cunningham Electrical Contracting, responded, "yes," to a question asking if its products were used "in the maintenance, repair and operation of [its] production and processing equipment" and then ended the survey by stating that "all" purchases [from BDI] were "for resale." Mr. Robertson described the responses of another customer, Rainbow Inc., similarly: "The first, the statement indicates that the products that they purchased from BDI are used in their machines to keep them running and then the answer to the question indicates that they are incorporating the products into their manufactured product." As BDI points out, Mr. Robertson acknowledged that "the auditor identified instances where customers provided improper exemption certificates to BDI" and that "the provision of an exemption certificate by a customer does not always correspond with how the customer ultimately uses an item."

BDI argues that in addition to indicating mixed sales, the customer surveys it obtained, together with the sometimes inaccurate exemption certificates presented by customers, demonstrated the impossibility of BDI's meeting the burden of establishing itself as a wholesaler under the statutory definition. BDI also points to the fact that not all of the customers to whom it sent surveys returned them as evidence that the challenge of determining the ultimate disposition of individual sales was impossible. Noting that BDI's arguments are again based on its contention that it must track the disposition of every single sale, we disagree.

Concerning the method utilized by Commissioner during its business tax audit of BDI, the trial court specifically found in a section of its final order entitled, "As Applied Challenge":

> BDI argues that the Department makes arbitrary determinations, based upon its analysis under sales and use tax law, regarding what sales constitute wholesale sales and which do not and that its utilization of such arbitrary means results in denying some taxpayers, such as BDI, the right to remit tax under Tennessee's lower wholesaler tax rate while allowing such benefit to other like-situated taxpayers. As an example, BDI highlights the auditor's classification of sales to Nissan as retail while classifying sales to General Motors as wholesale, despite both purchasers constituting automobile manufacturers.
>
> As the above-discussion of Mr. Robertson's testimony shows, however, it is not the taxpayer's — but rather the customer's —

responsibility to divide the sales. The customer provides the exemption certificate, thereby demonstrating whether the customer uses the taxpayer's product or resells it. As such, the Department's methods are not arbitrary and Tenn. Code Ann. § 67-4-702(a)[(25)] is not unconstitutional as applied to BDI.

(Internal citations to record omitted.)

In response to the trial court's conclusion, BDI asserts that because it cannot rely on customers to present accurate exemption certificates (or return surveys), it cannot meet the burden of establishing that more than fifty percent of its sales qualify as wholesale sales. BDI's argument would be more persuasive if the statute required establishment of one hundred percent of its sales as wholesale. Additionally, because Commissioner measures BDI's sales on a customer-by-customer basis, all of a customer's purchases from BDI qualify as wholesale if the customer has provided an exemption certificate establishing resales. For this reason, as the trial court found, "[t]he Department's approach gives a taxpayer, even one like BDI with many separately-sold items, ways to simplify its proof and generously allows the taxpayer to clear the more than 50% wholesaler threshold."

Regarding BDI's burden to establish wholesaler status, Commissioner relies in part on this Court's decision in *Wylie Steel Fabricators, Inc. v. Johnson*, 179 S.W.3d 509 (Tenn. Ct. App. 2005), explaining the taxpayer's burden when challenging an assessment made by the Department as follows:

> The burden of proof is upon the taxpayer to prove that the assessment made is incorrect and to prove its right to recovery by clear and convincing evidence . . . .
>
> * * *
>
> This rule clearly places the burden upon the taxpayer to disprove the result of the assessment made by the Department of Revenue.
>
> * * *
>
> Vague allegations by the taxpayer to the effect that the Department's method of ascertaining the taxes due from him was incorrect are not sufficient to carry the taxpayer's burden. He must show by a preponderance of evidence that he not only has overpaid his taxes, but, also, the amount of such overpayment.

- 33 -

\* \* \*

> We hold that the taxpayer in this case has failed to carry its burden of proof. It has failed to produce an audit, actual books and records, or summaries thereof, or other evidence to establish that it owes less taxes than the amount assessed by the Department of Revenue. The taxpayer has done no more than to make allegations to the effect that the State's audit method was incorrect, inapplicable or constitutes only an estimate; this is wholly insufficient to support a judgment in favor of the taxpayer.

*Wylie Steel*, 179 S.W.3d at 522-23 (quoting *Edmondson Mgmt. Serv., Inc. v. Woods,* 603 S.W.2d 716, 717-18 (Tenn.1980)) (citation omitted in *Wylie Steel*).

BDI responds that Commissioner has failed to adequately account for the rationale provided for the taxpayer's burden in *Edmondson Mgmt. Serv., Inc. v. Woods*, 603 S.W.2d 716 (Tenn. 1980), the decision quoted above in *Wylie Steel*. In *Edmondson*, our Supreme Court explained "[t]he reason and policy supporting this rule" concerning the taxpayer's burden as follows:

> This rule for taxpayer-initiated suits is premised on several factors other than the normal evidentiary rule imposing proof obligations on the moving party: the relevant prior Supreme Court precedent indicative, if not determinative of the issue[;] the presumption of administrative regularity; the likelihood that the taxpayer will have access to the relevant information; and the desirability of bolstering the record-keeping requirements of the Code.

603 S.W.2d at 718 (quoting *United States v. Rexach*, 482 F.2d 10, 16 (1st Cir. 1973)) (internal citations omitted). BDI argues that because its customers "have all the information," "BDI does not have access to the relevant information" and that Commissioner's approach to determining whether BDI is a wholesaler offers no incentive to bolster record-keeping requirements. Having determined that BDI has improperly relied on an interpretation of the statute that would require it to trace the disposition of every single sale, we further determine this argument to be unavailing.

The trial court did not err in finding, as a matter of law, that Tennessee Code Annotated § 67-4-702(a)(25) does not place an impossible burden on BDI and therefore does not violate BDI's equal protection or due process rights. Noting that the trial court focused its ultimate conclusion in this regard on the statutory definition of wholesaler, we determine that the court also sufficiently addressed the interplay of the wholesaler

definition with the definition at issue of wholesale sales, *see* Tenn. Code Ann. § 67-4-702(a)(24)(A)-(B), and that neither statutory definition places an impossible burden on BDI.

## VI. Generally Accepted Accounting Principles

BDI asserts that even if this Court were to affirm, as we have, the trial court's interpretation of the wholesale definition under the Business Tax Act, the trial court erred by declining to apply generally accepted accounting principles ("GAAP") to find that industrial material sold to manufacturers for incorporation into manufacturing machinery would become a component part of the manufacturer's finished product. BDI specifically argues that "under GAAP "costs of goods sold" would include, but is not limited to, all expenditures to bring an item of inventory to its existing condition and location." BDI thereby posits that because the cost of the product used in manufacturing is included in the "cost of goods sold" for the manufacturer under GAAP, the products used in manufacturing would be "component parts" of the finished product under the Business Tax Act.

In response to BDI's argument that GAAP should be applied to the Business Tax Act, the trial court found as follows:

> Unlike some parts of the Franchise and Excise Tax Act, the Business Tax Act does not incorporate generally accepted accounting principles ("GAAP"). The Business Tax Act does not reference GAAP and it does not use the accounting term "cost of goods manufactured." Thus, whatever GAAP states about manufacturing costs is irrelevant in determining whether a sale is wholesale or retail for Tennessee business tax purposes. The economic impact on the end-user is not an issue for the Department. Rather, the business tax statutes instruct the Department how to apply tax rates. The application of the retail rate in the Business Tax Act to goods sold to an end-user includes a manufacturer that uses repair or replacement parts in its equipment.

The trial court also cited example subsections of the Franchise and Excise Tax Act that include references to the GAAP, all of which pertain to using the GAAP as a method of determining the value of a commodity. *See* Tenn. Code Ann. §§ 67-4-2004(7) (Supp. 2021); 67-4-2006(e)(2) (Supp. 2021); 67-4-2009(3)(I)(vii)(c) (Supp. 2021).

We agree with the trial court. The Business Tax Act does not reference GAAP or the cost of goods manufactured. Moreover, BDI has presented no authority in support of its position that GAAP should apply to the wholesale definition except for dictionary

definitions of "component" and "part" and references to the interpretive canon of construing tax statutes strictly against the taxing authority. *See Kingsport Publ'g Corp.*, 667 S.W.2d at 746; *Phillips*, 217 S.W.2d at 1. However, this canon of statutory construction does not mean that a court should adopt an argument that is not predicated on the plain language of the tax statute simply because the argument weighs against the taxing authority. The trial court did not err in declining to find that GAAP should be applied to the wholesale definition under the Business Tax Act.

## VII.  Summary Judgment

Finally, BDI contends that if this Court determines that the trial court properly found that BDI's sales of tangible personal property to customers subsequently incorporating the products into manufacturing machinery do not constitute wholesale sales, the trial court then erred by finding that no genuine issues of material fact precluded a grant of summary judgment in favor of Commissioner. Specifically, BDI argues that "a disputed issue of material fact exists regarding the percentage of BDI sales at each location sold to customers for incorporation into manufacturing machinery versus for incorporation into a manufactured product for resale." Having determined that the trial court did not err in finding that BDI's statutory burden to demonstrate more than fifty percent of its sales as wholesale sales was possible for BDI to meet without tracing the disposition of every item sold and that BDI could have met this burden with already available documentation, we further determine that the trial court did not err in finding no genuine issue of material fact precluding summary judgment in favor of Commissioner.

## VIII.  Conclusion

For the foregoing reasons, we affirm the judgment of the trial court granting summary judgment in favor of Commissioner. We remand this case to the trial court for enforcement of the judgment and collection of costs below. Costs on appeal are taxed to the appellant, Bearing Distributors, Inc.

s/ Thomas R. Frierson, II_____
THOMAS R. FRIERSON, II, JUDGE